GUERLAIN, INC. *v.* UNITED STATES

**No. 4557.**—Invoice dated Paris, France, October 28, 1935.
Certified October 29, 1935.
Entered at New York November 7, 1935.
Entry No. 12148.

(Decided April 21, 1939)

*B. A. Levett* for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

SULLIVAN, Judge: The merchandise involved herein consists of perfumery bottles imported from France. A similar issue was tried in reappraisement 114400–A, etc., and was decided by me practically in favor of the importer (Reap. Dec. 4132), the holding being that with the exception of certain abandoned items, the entered values, less any additions made by the importer on entry to meet advances made by the appraiser, represented the values of the merchandise. This judgment was affirmed by the Second Division of this court (Reap. Dec. 4290). The record in the former case was incorporated with that at bar.

The Government has conceded that "The proper basis for appraisal" is the cost of production (Brief, p. 1).

The question in the present, as in the former case, may be stated as follows: Is the Guerlain corporation of Paris the manufacturer or producer of the imported merchandise? If I find from the evidence it is, the appraised values must be affirmed; otherwise my judgment must be for the importer.

A very full synopsis of the evidence in the former case was set out in my opinion in *Guerlain* v. *United States,* Reap. Dec. 4132, 72 Treas. Dec. 1094. Therefore, I will merely examine the additional evidence.

At the trial three other cases were consolidated with the initial case (117493–A). At the opening of the trial, however, reappraisement 117493–A was made the test case, and the other three, being Nos. 117494–A, 117692–A, and 119690–A, were suspended.

The present reappraisement proceeding (117493–A) covers fourteen styles of perfumery bottles, bearing various item numbers. With the exception of item numbers 533 and 606, all of these items were passed on in the former case. As to the items in question the invoice values were increased on entry "to meet advances," and they were appraised as entered with the exception of item 533, which was advanced in value by the appraiser. It appears from the "Memorandum of Appraiser's Advance to Invoice Value" that item 533 was "advanced 37 per centum" "To make market value." The invoice is dated Paris, France, October 28, 1935, and the date of certification was October 29, 1935.

On behalf of the plaintiff an affidavit was received in evidence at the trial, and marked Exhibit 1. The deponent is Charles Colonna, the "head of Verreries Pochet et du Courval, manufacturers of glass, perfumery bottles, jars, etc., having a factory at Courval, France." It was verified by him on the 23rd day of August 1938, before the United States vice consul at Paris. Attached to this affidavit is another by the same deponent, verified September 24, 1936, marked Exhibit 3 in the former case, with cost of production figures attached. In Exhibit 1 deponent states that the costs of production set forth in Exhibit 3 in the former case "accurately set forth the cost of production during the period therein mentioned, to wit, from May 1935 to the date of said affidavit [September 24, 1936] of the respective bottles therein designated." Affiant states further in Exhibit 1 "that since September 24, 1936, the date of said affidavit, the cost of production of said bottles, * * * has increased from time to time," that "such increases of cost of production have necessitated increases in the prices charged by affiant's company," and that such prices were increased on October 1, 1936, and subsequently.

Evidently these increases in price do not affect the present invoice certified on October 29, 1935, nearly a year prior to the first increase in prices. It will be observed, also, that Exhibit 3 in the former case, verified about eleven months subsequently to the certification of the invoice in question would appear to be applicable to the prices of the merchandise at bar. In fact, affiant states in Exhibit 1—

Affiant further states that the conditions existing at the time he executed said affidavit of September 24, 1936, under which he manufactured bottles, etc., for containing Guerlain perfumery products still exist and have continuously existed * * *.

Exhibit 1 appears to strengthen the former affidavit, Exhibit 3. The costs of production sheets attached thereto marked "C, August,

1938," being with reference to costs subsequent to the date of the present invoice, are not applicable to this case.

Commenting on Exhibit 3 in my former holding, Reap. Dec. 4132, *supra*, I said (page 1106):

* * * In other words, Guerlain of Paris had nothing to do with the manufacture of these bottles, and did not receive compensation in connection with such manufacture. Pochet and Baccarat were not subcontractors in this case, as were the manufacturers in the *Lionel* case. Pochet and Baccarat were the *only* contractors or manufacturers.

Plaintiff's Exhibit 2 is an affidavit by Louis Francois Rohan, "Sous-Director of Compagnie des Cristalleries de Baccarat." Attached thereto and made part thereof is an affidavit by another "sous-director" of the same concern, verified September 24, 1936, being Exhibit 4 in the prior case, with cost of production figures attached. This was before me in the prior case. Also attached to Exhibit 2 are cost of production figures marked "C, August, 1938." These lists C are irrelevant to the present issue as they relate to costs subsequent to the date of verification of the present invoice. What I have said about Exhibit 1 is applicable to Exhibit 2, inasmuch as it is very similar to Exhibit 1.

Plaintiff's witness Lieberherr testified that he was a witness in the prior case, and that there are two bottles in the present case not covered by the prior record, viz, Nos. 606 and 533, and that all of the other items in the case at bar were covered by the prior case. As to the new items the witness testified (referring to the invoice in the prior case) "the price is the same as in the previous shipments," and "the bottles were identical." (Minutes, p. 17.)

On cross-examination he testified that the prices of the new items were not included in the previous case; that the prices thereof were the same as on May 18, 1935, "and there was no increase from early in 1934 to the end of 1935"; that No. 606 is a crystal perfume bottle; that "the name 'Guerlain' most likely is blown in the bottle"; that in the case at bar "all these bottles come direct from the manufacturer in their own cases. Baccarat made their own cases up, and Pochet always made their own cases up."

As to remittances the witness testified:

All remittances were made at one time, were made in one envelope, to Guerlain in Paris, who again distributed them, or forwarded them to the manufacturers.

This is a reiteration of the evidence in the prior case.

It will be observed that the witness did not testify as to item No. 533, specifically. It was merely shown generally that with other bottles it came direct from the manufacturer and not from Guerlain.

At the next hearing the witness Lieberherr was called by the defendant. At the direction of the Government the witness produced "a letter signed by Guerlain, and an order to the Societe Guerlain, 68,

Avenue des Champs Elysees, Paris, France." They were received in evidence as Exhibit 3. It is in the French language.

The witness translated the letter as follows:

We have the honor to acknowledge receipt of your order placed October 4, 1935, No. 242, bis, and thank you for it. * * * ·Signed by Jack Guerlain in Paris.

The witness then translated the attached order as follows:

We ask you to send to us as soon as possible the following merchandise:

Then follows a list of the merchandise ordered with item numbers. On cross-examination the witness testified that when the order is placed—

Guerlain in Paris, makes the orders from our order, and forwards it to the different manufacturers. * * * Pochet and Baccarat.

The witness further testified that the manufacturer shipped these bottles to his concern, and "Guerlain does not see it. The shipments are made by the glass manufacturer, either Pochet or Baccarat"; that the check is made to the order of the manufacturer, Baccarat or Pochet, and not to Guerlain; that the check is sent to Guerlain of Paris, who "distribute the checks," and "forward it to Pochet and Baccarat"; that Guerlain does not get any commission of any kind; that it is "just a matter of accommodation."

The Government introduced in evidence a photostatic copy of a report dated January 17, 1939, by D. J. Delagrave, Treasury representative, with accompanying exhibits, being letters, transactions, photographs of bottles, etc. It was received in evidence as Collective Exhibit 4. A report by the same Treasury representative, properly certified, dated January 27, 1939, was received in evidence as Exhibit 5.

The defendant then called as a witness Mr. D'Escayrac who testified that prior to being associated with Guerlain & Co. of New York he was associated with Guerlain of Paris, and was stationed in Paris, during which time he became familiar with the procedure of manufacturing or having bottles manufactured for Guerlain of New York; that the procedure was for the bottle manufacturer to make a drawing and submit models, and Guerlain of Paris bought whichever model they thought was best; that after the design was picked out they would make a mold for themselves, and would manufacture the number of bottles ordered from those molds; that Guerlain of Paris was "never charged for any molds" and "the price of the mold was never raised" either with him personally "or any other member of the firm"; that "the price of the first order of bottles was not higher than the price of the subsequent orders. They were all at the same price."

The plaintiff then introduced in evidence as Exhibit 6, an affidavit verified December 21, 1938, by Charles Colonna.

As to the special agent's report, Exhibit 4:

I find on page 2 affirmance of previous evidence that Guerlain of New York mails checks for the bottles to the French concern, and that "The role of the latter was limited to mailing the checks to the different manufacturers or supply houses." On page 5 there is also an affirmance of the evidence that the molds are manufactured by Baccarat, and that "When a new bottle is started the cost of the first mold is amortized on the first order submitted by Guerlain."

Exhibit 5: I find on page 5 thereof the following:

The bottles for Guerlain, Inc., of New York are shipped directly to this customer by Pochet and do not pass through the hands of Guerlain of Paris for inspection or manipulation.

Exhibit 6: Affiant states "the profits shown in the cost of production sheets attached to said affidavit [Exhibit 1] are the usual profits that have been made for many years and are at present made by his house on such bottles."

In my opinion the present record does not contain any new relevant facts, and in many respects is corroborative of the facts contained in the prior case.

I find as follows:

(1) That there is no foreign, export, or United States value for the perfumery bottles in question.

(2) That the value of these bottles is based upon the cost of production thereof.

(3) That the entered values, less any additions made by the importer on entry, to meet the advances made by the appraiser, represent the values of the merchandise, and are the costs of production thereof.

Judgment accordingly.